# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**RAFAEL ORTIZ BONILLA, et al.,**

**Plaintiffs,**

**v.**

**FEDERACION DE AJEDREZ DE**

**PUERTO RICO, INC.,**

**Defendant.**

**CIVIL NOS.**
**LEAD CASE: 10-2276 (GAG)**
**MEMBER CASE: 11-1208 (GAG)**

## OPINION AND ORDER

Plaintiffs Rafael Ortiz Bonilla, Luis Jose Torres Bauza, Fernando Martinez Buitrago, Juan Martin Santa Torres, Juan Javier Hernandez Lebron, Julio Guzman Freire, and Cristobal Vega Adorno (collectively "Plaintiffs") commenced this action seeking injunctive relief for alleged violations of their state and federal constitutional rights by the Federacion de Ajedrez de Puerto Rico ("FAPR") as well as a declaration that the actions taken by the Board of Directors of the FAPR were *ultra vires*, and therefore, any resolutions or decisions made by the board must be held null and void.

This matter is currently before the court on FAPR's motion for summary judgment (Docket No. 58). This motion was timely opposed by Plaintiffs (Docket No. 79). A corresponding reply was filed by FAPR (Docket No. 96). After reviewing these submissions and the pertinent law, the court **GRANTS** FAPR's motion for summary judgment (Docket No. 58).

## I.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

**Civil No. 10-2276 (GAG)**

1   'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" <u>Iverson</u>

2   <u>v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).  The

3   moving party bears the initial burden of demonstrating the lack of evidence to support the non-

4   moving party's case.  <u>Celotex</u>, 477 U.S. at 325.  "The movant must aver an absence of evidence to

5   support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the

6   existence of at least one fact issue which is both genuine and material." <u>Maldonado-Denis v.</u>

7   <u>Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmoving party must then "set forth

8   specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the court finds

9   that some genuine factual issue remains, the resolution of which could affect the outcome of the

10  case, then the court must deny summary judgment.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

11  242, 248 (1986).

12      When considering a motion for summary judgment, the court must view the evidence in the

13  light most favorable to the non-moving party and give that party the benefit of any and all reasonable

14  inferences.  <u>Id.</u> at 255.  Moreover, at the summary judgment stage, the court does not make

15  credibility determinations or weigh the evidence.  <u>Id.</u>  Summary judgment may be appropriate,

16  however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

17  inferences, and unsupported speculation." <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d

18  17, 21 (1st Cir. 2006) (quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

19  **II.     Factual & Procedural Background**

20      FAPR is a private non-profit corporation organized under the laws of the Commonwealth

21  of Puerto Rico with its headquarters in the municipality of Bayamon.  FAPR is a member of the

22  Federation Internationale des Eches ("FIDE") and participates in international chess tournaments.

23  Pursuant to the Joint Resolution R.C. del S. 2390 of the Legislative Assembly of the Commonwealth

24  of Puerto Rico, dated August 16, 2003, between the years 2004 and 2014, the FAPR receives

25

26

27

28                                            2

**Civil No. 10-2276 (GAG)**

$200,000 per year from the Commonwealth to be used in carrying out FAPR's goals.[1]

In 2008, Vance Berrios ("Berrios") was appointed as the Administrator of FAPR.  Berrios continues to hold this position at the current time.  Omar Aneses Bocanegra ("President Aneses") served as President of FAPR from January 31, 2009 until February 21, 2011, and now serves as an elected delegate of the Board of Directors.

On June 21, 2010, pursuant to the FAPR Constitution, various members of the FAPR, including some of the named plaintiffs, requested the holding of an extraordinary assembly to be held on Saturday June 26, 2010 at the FAPR offices in Bayamon for the purpose of considering two topics:

> 1. Considering whether by majority vote of those present at the meeting a mandate be approved for the president of the FAPR and thereby granting a vote and support for the candidacy for president of the International Chess Federation (FIDE) of Grand Master Anatoly Yevgenyevic Karpov.   A written, official public endorsement shall be issued 2 hours after said meeting is adjourned.

> 2. Certifying Mr. Rafael Ortiz-Bonilla, founder of La Casa Del Ajedrez in Caguas, as a candidate on the ballot for Secretary General for the American Continent of the FIDE, at the request of GM Anatoly Karpov. A written, official public endorsement shall be issued 2 hours after said meeting is adjourned.

(See Docket No. 75-3 at 1.)  Berrios received this communication on June 23, 2010.  On that same date, Berrios sent an email to all members of FAPR's Board of Directors notifying them of the request for the holding of an extraordinary assembly on June 26, 2010.  On June 25, 2010, Berrios sent an email to FAPR members using the group email address ajedrezpr@yahoo.com.  The email summoned the members to an extraordinary assembly to be held on July 3, 2010, which was within 10 days of the request made by the members.

---

[1] Joint Resolution 2390 specifically earmarks the funds " . . . for use and disposition by the Puerto Rico Chess Federation and by the Executive Committee for the Master Massive Plan for the Teaching of Chess in the Schools, so that they can execute an intense program of organization, promotion, and development of chess in all of Puerto Rico, that the Federation trains, practices and present delegations from Puerto Rico in international events and will be able to take care of the administrative, operating and maintenance expenses of the Federation and the committee."

3

Civil No. 10-2276 (GAG)

On August 25, 2010, various members of the FAPR, including the named plaintiffs, requested that the FAPR hold another extraordinary assembly within forty eight hours.[2]   On September 9, 2010, Berrios sent an email to FAPR members that an extraordinary assembly was to be held on October 21, 2010 in the municipality of Aguadilla.   On October 26, 2010, an email was sent to FAPR members.   The notice contained the results of the October 21, 2010 extraordinary assembly.

On November 8, 2010, various members of the FAPR requested that an extraordinary assembly be held on November 20, 2010 in Aguadilla.   Berrios sent an email communication to the group ajedrezpr@yahoo.com to summon the FAPR members to an extraordinary assembly on November 20, 2010.  This email contained the new text of the FAPR Constitution as it would appear if the proposed amendments were adopted at the assembly.   In order to participate in this assembly members of the FAPR were required to be "active".   According to President Anases, active members of the FAPR were members who were up to date in the payment of their membership dues and who had participated in at least one chess tournament sponsored by the FAPR during the immediately preceding twelve months.[3]   Several FAPR members were not allowed to participate in the November

---

[2] The members of FAPR requested the assembly under such short notice because they believed that flagrant violations of FAPR rules were being committed. One such violation included President Aneses' intention to vote for Kirsan Ilyumzhinov for President of the FIDE, even though an assembly of FAPR members, properly constituted on July 3, 2010, had mandated that FAPR vote for Anatoly Karpov. The members believed that President Aneses departure from this mandate was imminent and they wanted to have time to file an injunction if necessary.

[3] Plaintiffs contend that this restrictive definition did not apply to FAPR's membership requirements and was an incorrect interpretation of Article III of the FAPR Constitution which reads "The FAPR shall be integrated by individuals known as partners or members, who should stay active by attending assemblies, participating in the activities and paying the assigned quotas." (See Docket No. 97-2 at 1.) Instead, Plaintiffs believe that President Aneses based his interpretation off of a FIDE rule which states "[a] player is considered to commence inactivity if he plays no rated games in a one year period. ." FIDE Handbook, Rule 7.23a (See Docket No. 79-41 at 2). Plaintiffs contend that this rule does not apply to organizations like FAPR and is only applicable to the FIDE rating system.

**Civil No. 10-2276 (GAG)**

20, 2010 assembly because they did not meet this definition of "active".  On November 16, 2010, Berrios sent an email to the group ajedrezpr@yahoo.com, which contained a message from President Anases.  The message provided questions and answers related to the proposed amendments to be voted on at the November 20, 2010 assembly.[4]

The assembly took place on November 20, 2010.  During the meeting several amendments to the FAPR Constitution were approved and the constitution was amended accordingly.  Acting under the resolutions adopted at the assembly, Berrios sent another email to the group email address ajedrezpr@yahoo.com.  The email informed the recipients that they had until December 31, 2010 to submit their candidacies to be Regional Delegates of the FAPR.  During the spring of 2011, elections were held by the FAPR and a new Board of Directors, including a new President and Vice President, was elected by FAPR delegates pursuant to the amended FAPR Constitution.

On December 13, 2010, Plaintiffs filed the instant action in the Puerto Rico Court of First Instance seeking a preliminary injunction against the actions of the FAPR.  Plaintiffs' original complaint contained, *inter alia*, multiple violations of rights guaranteed under the United States Constitution as well as the Constitution of the Commonwealth of Puerto Rico.  On December 29, 2010, the case was removed to federal court pursuant to the court's original jurisdiction under these claims (Docket No. 1).  The court also granted jurisdiction over the pendent state claims contained in the complaint.  On January 10, 2011, the court denied Plaintiff's motion to remand for lack of

---

[4] The purpose of this meeting was:

to amend the Constitution of the [FAPR] in order to restructure the FAPR's organization, administratively and fiscally.  For the Board of Directors to consist of 15 delegates of the five regions of the Federation (as a ratio of three delegates per Region), and create the Fiscal Autonomy of each Region based on the equal distribution of the Federation's resources . . . to amend Articles IV, V, VI, VII, VIII, X, and XI of the Constitution.

(See Docket No. 97-6.)

**Civil No. 10-2276 (GAG)**

1
2
federal jurisdiction, holding that Plaintiffs had pleaded a claim under the U.S. Constitution (Docket No. 10).

3
4
5
6
7
8
9
10
 On February 25, 2011, FAPR moved to consolidate this case with case 11-1208, which was before Judge Garcia-Gregory and contained similar allegations (Docket No. 29).  On February 28, 2011 the cases were consolidated (Docket No. 30).  On March 7, 2011, Plaintiffs moved to remand the consolidated cases, arguing that case 11-1208 did not contain similar allegations of constitutional violations, and thus was not properly before this court.  The court denied the motion to remand (Docket No. 40).  On March 22, 2011, Plaintiffs moved to voluntarily dismiss the federal claims contained in the complaint (Docket No. 45).  The court denied Plaintiffs' motion to voluntarily dismiss their federal claims (Docket No. 47).

11
12
13
14
15
16
17
FAPR filed a motion for summary judgment (Docket No. 58) on June 24, 2011, seeking dismissal of Plaintiffs' request for preliminary injunctive relief.  Plaintiffs filed a response in opposition (Docket No. 79), which contained a clarification on the current procedural status of their case.  Plaintiffs claimed that they were no longer seeking a preliminary injunction and, thus, treated FAPR's motion for summary judgment as though it pertained to the merits of their claim for a permanent injunction.  (See Docket No. 79 at 2.)  In light of Plaintiffs' clarification, the court considered FAPR's motion as it applied to Plaintiffs' request for a permanent injunction.

18
**III.    Discussion**

19
**A.    Plaintiffs' Constitutional Claims**

20
21
22
23
24
25
26
Among their allegations, Plaintiffs aver that FAPR's actions violated their First Amendment rights as applied through the Fourteenth Amendment of the United States Constitution as well as identical provisions of the Puerto Rico Constitution.  U.S. Const. Amend. I; U.S. Const. Amend. XIV; P.R. Const. Art. II §§ II, IV.  Specifically, Plaintiffs allege various violations of their right to freedom of expression and association.  FAPR moves for dismissal of these claims, contesting that Plaintiffs have failed to demonstrate how FAPR's alleged actions constitute requisite state-action under the Fourteenth Amendment.

27
In general, the application of the rights guaranteed by the Fourteenth Amendment does not

28
6

**Civil No. 10-2276 (GAG)**

offer protection against private conduct, whether of an individual, a corporation, or an association or organization.  See Perkins v. Londonberry Basketball Club, 196 F.3d 13, 18 (1st Cir. 1999). Instead, state action is required to impose constitutional obligations on private actors.  See Yeo v. Town of Lexington, 131 F.3d 241, 248-49 (1st Cir. 1997) (state action is necessary component of First Amendment claim).  However, a private entity may be subject to constitutional obligations under the Fourteenth Amendment if it satisfies one of three tests: (1) the private entity assumes a traditional public function in undertaking the challenged conduct; (2) an elaborate financial or regulatory nexus ties the challenged conduct to the State; or (3) a symbiotic relationship exists between the private entity and the State."  Perkins, 196 F.3d 13 at 18 (citations omitted).

To meet the public function test a private party must be performing "a public function that has been 'traditionally the exclusive prerogative of the State.'"  Estades-Negroni v. CPC Hospital, 412 F.3d 1, 5 (1st Cir. 2005) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  The nexus test examines "whether the government exercised coercive power or provided such significant encouragement that the complained-of misconduct . . . must be deemed to be the conduct of the government."  Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 493 (1st Cir. 1996).  Under the symbiotic relationship test, a private party is fairly characterized as a state actor if the government "has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity."  Rodriguez-Garcia v. Davila, 904 F.2d 90, 98 (1st Cir. 1990) (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961) (alterations omitted).  Satisfaction of any of these three tests may subject a private entity's actions to constitutional limitations.  See Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008).

In their opposition, Plaintiffs agree that federal precedent bars a finding in this case of sufficient action by the state to satisfy the state-action requirement.  However, they do believe that the circumstances of this case satisfy the requirements for state-action under the laws of Puerto Rico. (See Docket No. 79 at ¶13.)  Plaintiffs argue that each of the above-mentioned tests are satisfied

**Civil No. 10-2276 (GAG)**

when viewed in light of the Puerto Rico Supreme Court rulings in <u>Pena v. Federacion de Esgrima de PR</u>, 108 D.P.R. 47 (1978), <u>Arroyo v. Rattan Specialties</u>, 117 D.P.R. 35 (1986), and <u>Hernandez Cibes v. Hospital de Maestro</u>, 116 D.P.R. 72 (1977).

In <u>Pena</u>, the Puerto Rico Supreme Court dealt with questions of civil procedure, however, did not discuss in what circumstances the rights protected by the Puerto Rico Constitution were enforceable against private parties. 108 D.P.R. 47. Similarly, <u>Arroyo</u> does not stand for the proposition asserted by Plaintiffs. In <u>Arroyo,</u> the court considered whether, in light of the Puerto Rico's constitutional right of privacy, a private employer may use a lie detector test to determine eligibility for employment. 117 D.P.R. 35   In its decision, the Puerto Rico Supreme Court recognized that it had "repeatedly held that the character and primacy of the right of privacy . . . may be enforced even between private individuals." <u>Id.</u> Therefore, the Court's holding is not applicable to the constitutional violations alleged in this case. <u>See also</u> <u>Vega v. Telefonica</u>, 156 D.P.R. 584 (2002) (distinguishing between constitutional rights only enforceable against the state and the constitutional right of privacy which is enforceable against individuals).

In <u>Hernandez Cibes</u>, the Puerto Rico Supreme Court considered a private hospital's decision to suspend a doctor. 116 D.P.R. 72 . The Court overturned the immediate suspension, holding that the hospital had not complied with its by-laws in deciding to summarily suspend the doctor. <u>Id.</u> However, in <u>Gonzalez-Aristud v. Hosp. Pavia</u>, 168 D.P.R. 127, 135 (2006), the Supreme Court of Puerto Rico clarified its ruling in <u>Hernandez Cibes</u>, stating that its decision to the nullify the doctor's suspension was premised upon the existence of a contractual employment relationship and not constitutional due process guarantees. Thus, said precedent does not support Plaintiffs contention that the court has considered certain constitutional claims in the absence of considerable state involvement.

After considering the cited cases, the court finds that Plaintiffs have failed to identify any legal support for their contention that the Puerto Rico state-action doctrine departs from federal precedent when certain violations of the Constitution of Puerto Rico are alleged. On the contrary, Puerto Rico Supreme Court decisions cite various federal precedent when explaining how the state-

**Civil No. 10-2276 (GAG)**

action doctrine operates under Puerto Rico law.  See Gonzalez-Aristud, 168 D.P.R. at 135 (citing U.S. Supreme Court and First Circuit precedent requiring state action to allege certain constitutional violations).  Accordingly, the court will apply the state-action doctrine tests in light of federal precedent.

Assuming that all of the contacts and connections listed by Plaintiffs are true, the Commonwealth of Puerto Rico and FAPR are connected in the following ways: (a) Puerto Rico's government contributes 90% of the FAPR's yearly budget, which consists of a $200,000 annual grant as well as other funds associated with the holding of chess tournaments; (b) the government provides the site for the FAPR main office in Bayamon; (c) the FAPR is in charge of the Commonwealth's PAE program (from its Spanish name "Programa de Ajedrez en las Escuales"), which provides grants to teach public school teachers how to teach their students to play chess; and (e) when FAPR holds chess tournaments, the Puerto Rico Department of Education provides the tournament locations and food.  Plaintiffs contend that these actions by the Commonwealth are sufficient to hold FAPR's actions attributable to the government, as they satisfy each of the three tests applied in the indirect state-action inquiry.

### 1.    Public Function Test

With regard to the public function test, Plaintiffs contend that the FAPR's positive impact on the quality of public education of students in Puerto Rico demonstrates a governmental function of great public import, sufficient to hold the government liable for FAPR's actions.  The court disagrees with this conclusion.  The fact "that a private entity performs a function which serves the public does not make its acts state action."  Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982).  The Supreme Court has found action to be governmental "when the challenged entity performs functions that have been 'traditionally the *exclusive prerogative*' of the [state]."  San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 544 (1987) (quoting Rendell-Baker, 457 U.S. at 842 (emphasis added by Rendell-Baker Court).  The court finds FAPR's actions, although serving the public, are not traditionally the "exclusive prerogative of the state."  See e.g. Ponce v. Basketball Feder. of Com. of Puerto Rico, 760 F.2d 375, 379 (1st Cir. 1985) (differentiating between the field

9

**Civil No. 10-2276 (GAG)**

1  of amateur sports and public housing and finding that latter to be a "matter uniquely within [the

2  state's] domain to regulate."); see also Perkins, 196 F.3d at 19 (citing Rendell-Baker, 457 U.S. at

3  842) (finding that if education does not satisfy the public function test, the coordination of a youth

4  basketball league must also fail).  The court finds FAPR's activities akin to running a youth

5  basketball league, and therefore, in light of this precedent, cannot satisfy the public function test.

6              **2.      Nexus Test**

7          Plaintiffs further contend that the government's financial contributions, which make up the

8  majority of FAPR's budget, constitute sufficient connections to satisfy the nexus test.  The nexus

9  test examines "whether the government exercised coercive power or provided such significant

10  encouragement that the complained-of misconduct . . . must be deemed to be the conduct of the

11  government." Barrios-Velazquez, 84 F.3d at 493.  The First Circuit has followed the Supreme Court

12  in describing this as a targeted inquiry that focuses on the connection between the state and the

13  challenged conduct, not the broader relationship between the state and the private entity.  See

14  Perkins,196 F.3d at 19-20.  Therefore, regardless of Puerto Rico's financial support of the FAPR,

15  Plaintiff has failed to allege how the state has encouraged FAPR's alleged constitutional violations.

16  Accordingly, Plaintiffs are unable to satisfy the nexus test.  See Rendell-Baker, 457 U.S. at 840

17  (school's receipt of public funds constituting 90% of its budget did not transform private decisions

18  into acts of the state); see also Perkins, 196 F.3d at 20 (citing Jackson, 419 U.S. at 351-52 ("courts

19  will not find state action on a nexus theory absent a snug relationship between the [state

20  encouragement] and the challenged conduct itself.")); Rodriguez-Garcia, 904 F.2d at 97 ("the

21  challenged action . . . may be fairly treated as that of the State itself . . . only when it can be said that

22  the State is responsible for the specific conduct of which the plaintiff complains.")

23              **3.      Symbiotic Relationship Test**

24          The symbiotic relationship test evaluates whether the government has become so intertwined

25  with the private entity that it must be recognized as a joint participant in the challenged activity.

26  Perkins, 196 F.3d at 21.  In contrast to the nexus inquiry, the symbiotic relationship test focuses on

27  the nature of the overall relationship between the state and the private entity and not just the state's

28                                      10

**Civil No. 10-2276 (GAG)**

roll in the challenged action.  Id.  When conducting this inquiry, presiding case law has focused on the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs; and whether the state benefits from a financial partnership with the private entity.  Id. (citing Evans v. Newton, 382 U.S. 296, 301 (1966); Barrios-Velazquez, 84 F.3d at 494-95); Rodriguez-Garcia, 904 F.2d at 98 (citing Rendell-Baker, 457 U.S. at 843).   After reviewing the factual allegations, the court finds there is no symbiotic relationship present between these parties.  Plaintiffs have failed to highlight any governmental influence that hinders FAPR's independence in conducting its daily affairs.  Furthermore, it does not appear that the Commonwealth benefits from any financial partnership with FAPR.  Without these essential elements, the Plaintiffs are unable to demonstrate a symbiotic relationship.  See Barrios-Velasquez, 84 F.3d at 494-95 (finding no symbiotic relationship when private entity was independent in its daily affairs and state did not profit from entity's acts); see also Rodriguez-Garcia, 904 F.2d at 99 (same).

As Plaintiffs are unable to satisfy the requirements of any of the indirect state-action tests, they have failed to demonstrate how FAPR's challenged actions are attributable to the state.  Accordingly, Plaintiffs claims under the U.S. and Puerto Rico Constitutions, premised upon state action, are hereby **DISMISSED**.

**B.    Plaintiffs' *Ultra Vires* Claims**

Plaintiffs also claim that each of the actions taken by the FAPR Board of Directors at the extraordinary assembly held on November 20, 2010, were taken in violation of the FAPR's Constitution and therefore must be held null and void.

It is not generally the function of the courts to control the internal affairs of voluntary associations.  "[T]heir conduct is subject to judicial review only when they fail to exercise power consistently with their own internal rules or when their conduct violates fundamental right of a member to fair hearing."  Finn v. Beverly Country Club, 683 N.E.2d 1191, 1193 (Ill. App. Ct.

**Civil No. 10-2276 (GAG)**

1    1997).[5]

2          Plaintiffs contend that the FAPR violated its constitution in the following ways: (1) the

3    notice of the November 20 extraordinary assembly did not include details of each specific

4    amendment to the Constitution; (2) the notice of the meeting was sent illegally by email, without

5    consent from its members; (3) considering the importance and significance of the matters considered

6    at the assembly, the ten day notice was unreasonable as it did not give members a proper opportunity

7    to prepare themselves; (4) days before the holding of the November 20 assembly, many members

8    were prevented from renewing their memberships "until further notice", thus preventing them from

9    attending the assembly; (5) new members were not allowed to participate in the elections, even

10   though the constitution permitted them to do so if they joined by November 30 of the pre-electoral

11   year; (6) many members were not allowed to attend the November 20 assembly because they did not

12   meet President Aneses definition of an "active" member; (7) the adoption of amendments to the

13   election process at the assembly was unreasonable as the process of submitting candidates for the

14   board had already begun; (8) it was illegal to change the voting structure as well as the method of

15   administration of public funds at the November 20 assembly; (9) holding the November 20 assembly

16   in Aguadilla was an inappropriate manipulation of the proceedings making it difficult for Plaintiffs

17   to participate; (10) the location of the meeting was changed without notice.

18         After reviewing the submitted documents provided by the parties as well as the Constitution

19   and by-laws of the FAPR, the court finds that none of the actions taken by the FAPR were done in

20   an arbitrary or capricious manner. Although various members of the FAPR may have been

21   inconvenienced by the rules imposed, or ultimately disagreed with the Board's decisions, these

22   complaints do not constitute grounds for the court to intervene in the dealings of a private voluntary

23   association. While reasonable minds could disagree with the methods applied and rules imposed

24   ───────────────────

25      [5] In its motion to dismiss, FAPR relies upon Ohio and Illinois case law to establish the

26   standard against which Plaintiffs claims should be considered. (See Docket No. 58 at 21-22.) In

    responding to said motion, Plaintiffs cited the same case law. (See Docket No. 79 at 9-10.) Thus,

27   the court applied this standard in considering Plaintiffs' claims.

28

Civil No. 10-2276 (GAG)

by President Aneses and the FAPR Board of Directors, each represents a reasonable interpretation of the FAPR's Constitution.  Thus, the FAPR's actions are not arbitrary and capricious, and therefore, do not demand judicial intervention.  Accordingly, the court **GRANTS** FAPR's motion for summary judgment and **DISMISSES** Plaintiffs' claims.

IV.     **Conclusion**

For the reasons set forth above, the court **GRANTS** FAPR's motion for summary judgment (Docket No. 58).  All claims before this court are hereby **DISMISSED**.


**SO ORDERED.**

In San Juan, Puerto Rico this 10th day of November, 2011.


*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge

13